**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**CARLOS VILLANUEVA**,

        Plaintiff,

v.                                                                                                  No. CIV 10-1121 BB/WPL

**WALGREEN COMPANY**,

        Defendant.

**MEMORANDUM OPINION**

       This matter comes before the Court for consideration of Defendant's motion for summary judgment [Doc. 47]. The Court has reviewed the submissions of the parties and the relevant law. Based on the evidence presented by the parties and the arguments they have raised, Defendant's motion will be granted and this case will be dismissed.

       **Summary of Case**

       This case arises out of an employment relationship between Plaintiff and Defendant. Plaintiff was employed by Defendant as a store manager for a number of years. Plaintiff had aspirations of being promoted to district manager but was unable to achieve that goal. A chief obstacle standing in his way was the fact that he was never placed into Defendant's Emerging Leader Program ("ELP"), which was virtually a prerequisite for any promotion to district manager. In June 2008 Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), claiming he had been the victim of discrimination on the basis of his Hispanic race. In September 2008 Plaintiff's employment was terminated and he filed another EEOC charge raising claims of discrimination and retaliation. Subsequently, in July 2010, the New Mexico Human Rights Bureau issued an order of non-determination on both

of the charges.[1]  Following the Bureau's notice, Plaintiff filed a timely lawsuit in state court raising state-law claims under the New Mexico Human Rights Act, NMSA §§ 28-1-2 *et seq.*  The complaint raises three distinct types of claims:  discrimination on the basis of race, resulting in the failure to promote Plaintiff as well as his ultimate termination; maintenance of a hostile work environment on the basis of race; and retaliation for Plaintiff's protected activity, resulting in his termination.  Defendant promptly removed Plaintiff's lawsuit to this federal court on diversity-of-citizenship grounds, and has now moved for summary judgment.

**Standard of Review**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing the parties' motions, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (stating that moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.")  Once the movant meets its burden, the nonmovant must identify evidence that would enable a trier of fact to find in the nonmovant's favor. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

---

[1]The Court notes the parties have not explained when or how the state Human Rights Division, as opposed to the EEOC, became involved in addressing the EEOC charges, but that issue is not pertinent to the case and need not be discussed further.

**Discussion**

**A. Race Discrimination Claims:** Plaintiff's claims of race discrimination arise out of the following actions by Defendant: (1) failure to promote Plaintiff to district manager; (2) failure to promote Plaintiff into the ELP; and (3) termination of Plaintiff's employment. While the same legal standard applies to all three claims, each implicates distinct portions of the applicable summary-judgment analysis. Therefore, after setting out that analysis, the Court will address each claim separately.

In this case there is no direct evidence of racial discrimination. Following New Mexico precedent, the Court will therefore apply the familiar *McDonnell Douglas* burden-shifting framework to analyze Plaintiff's claims. *See Gonzales v. New Mexico Dep't of Health*, 11 P.3d 550, 557 (N.M. 2000). Under that framework, at the summary-judgment stage the plaintiff bears the initial burden of establishing a prima facie case; if that occurs, the employer must produce evidence of a legitimate, nondiscriminatory reason for its actions; and finally, the plaintiff will have an opportunity to rebut the employer's showing. *Juneau v. Intel Corp.*, 127 P.3d 548, 551-52 (N.M. 2005) (discussing *Gonzales* as well as *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Generally a prima facie showing in an employment-discrimination case requires a plaintiff to present evidence of the following four elements: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position at issue; and 4) he was treated less favorably than others not in the protected class. *See Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010).

It is also important to note that exhaustion of administrative remedies is a prerequisite to bringing a claim under the New Mexico Human Rights Act. *See Lobato v. State Env't Dep't*, 267 P.3d 65, 68 (N.M. 2011). An employee challenging discriminatory actions on the part of an employer must file an administrative charge of discrimination within 300 days of the allegedly discriminatory act. NMSA § 28-1-10(A) (2005). In this case Plaintiff filed his first EEOC charge on June 28, 2008 and filed a second charge in late September 2008. Therefore, he can base his claims only on Defendant's actions taken not more than 300 days prior to June 28, 2008.

**(1) District Manager Issue:**  Plaintiff's claim concerning the failure to promote him to district manager fails to raise a genuine issue of material fact as to three out of the four elements of a prima facie case, and therefore cannot survive summary judgment.  Plaintiff is Hispanic and thus satisfied the first prima-facie-case element -- he is a member of a protected class.  However, Plaintiff presented no evidence that a district manager position was available during the 300-day period prior to his first EEOC charge, and provided no evidence that he applied for such a position and was rejected.  He thus failed to satisfy the second prima-facie-case element, that he suffered an adverse employment action.  The same lack of evidence also means he cannot meet the fourth element, that he was treated less favorably than a person who is not a member of the protected class -- if no one was promoted to district manager during the relevant period, then Plaintiff could not have been treated differently than anyone, let alone an individual not in the protected class.  Finally, Plaintiff did not raise an issue of fact as to whether he met the qualifications of the district-manager position; it is undisputed that the position requires a college degree, and Plaintiff's own deposition testimony showed he was six credits short of such a degree during the relevant time period.  [Doc. 47, Exh. A, pp.27-29; Exh. G]  Since Plaintiff has not met his burden of establishing a prima facie case concerning the district-manager promotion, summary judgment will be granted on that portion of his discrimination claim.

**(2) ELP Issue:**  The analysis concerning Defendant's failure to place Plaintiff in the ELP is more complicated.  Defendant argues again that Plaintiff has not provided any evidence that he suffered an adverse employment action, because placement in the ELP is not actually a promotion, as that term is normally understood.  The evidence submitted by the parties confirms this – there is no increase in salary or benefits, and no other tangible reward results when an individual is selected to take part in the ELP.  [Doc. 47, Exh. A, p. 443; Exh. D, p. 39-40]  Furthermore, it is undisputed that being placed in the ELP was in no way a guarantee that the individual would eventually be promoted to district manager.  [*Id.*, Exh. A, p. 443]  However, there is evidence that in order to be promoted to district manager, an employee was required to

4

be participating in the ELP.  [Doc. 47, Exh. G]  In other words, placement into the ELP was a necessary stepping-stone for anyone aspiring to become a district manager.

In deciding whether an adverse employment action has taken place, the unique circumstances of each case must be taken into account. *See Jones v. Oklahoma City Public Schools, supra*, 617 F.3d at 1279.  The Tenth Circuit liberally defines what constitutes an adverse employment action, *see id.*, and it is the Court's view that New Mexico's courts would do the same.  Furthermore, adverse employment actions are not limited to those that result in monetary losses in the form of wages or benefits.  *Id.*  Refusing to place an employee in a program that is the only means of attaining a promotion amounts to a denial of any chance of advancement in the workplace, and must be considered an adverse employment action.  Were it otherwise, an employer could freely discriminate by the simple expedient of creating a mandatory prerequisite to promotion, which is not itself a promotion, and then denying women, minorities, or other members of protected classes entry to that mandatory prerequisite.  The Court therefore finds that under the circumstances of this case, denial of participation in the ELP does constitute an adverse employment action.[2]

Defendant also contends Plaintiff was not qualified to participate in the ELP because he was not considered a leader and had not obtained favorable evaluation scores in the relevant time period.  Of course, whether an individual is considered a "leader" is quite subjective, and where a requirement for advancement is subjective it is open to manipulation on the basis of impermissible motivations such as race, age, or gender.  *See, e.g., Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1218 (10th Cir. 2002).  The Court will therefore not rely on this subjective criterion, at least at the prima-facie-case stage of the analysis.

---

[2]Should a case based on ELP denial go to trial, of course, the damages issue would be difficult to address.  Since managers in the ELP are not guaranteed a district-manager position, and may never achieve that goal, it could be difficult for the fact-finder to assess damages that are reasonably certain to occur in the future.  Fortunately, as discussed below summary judgment will be granted on this claim and the Court need not deal with this thorny question.

As to the evaluation score, it is true that an evaluation score of at least "Meets Expectations" is required for entry into the ELP. [Doc. 47, Exh. F]  However, Plaintiff presented evidence to the effect that his May 2007 overall evaluation score was "Above Average." [Doc. 51, Exh. H]  He also stated in his affidavit that he did not have a more recent evaluation score because his supervisor failed to complete his 2008 evaluation. [*Id.*, Exh. A]  An employer cannot fail or refuse to evaluate an employee and then use that failure or refusal to deny the employee a promotion or other employment benefit.  The Court therefore finds Plaintiff has raised a genuine issue of material fact as to whether he was qualified for entry into the ELP.

The fourth requirement of a prima facie showing in the usual case is evidence that the plaintiff was treated less favorably than other individuals who are not in the protected class. *See Jones v. Oklahoma City Pub. Schs.*, *supra*, 617 F.3d at 1279.  Plaintiff has not made such a showing in this case because he has not presented evidence that any non-Hispanic store manager was placed in the ELP during the time period in question.  There was evidence that ELP placements usually occur in April of any given year. [Doc. 47, Exh. A, p. 478]   No evidence was presented, however, as to whether any individual, let alone a non-Hispanic individual, was moved into the ELP in April 2008 or at any other time during the relevant time period.  Plaintiff therefore cannot meet this formulation of the prima facie element.

This failure of evidence is not necessarily fatal to Plaintiff's ELP-related claim.  It is not always possible to show that a non-protected-class individual was treated differently than the plaintiff.  *See, e.g., Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (pointing out that many Tenth Circuit cases do not require similarly-situated-person comparison to establish prima facie case).  This is especially true where, as here, no "open" position existed and no competition for promotion occurred; instead, employees were apparently placed into the ELP entirely on their own merit rather than in competition with other district managers.  In such circumstances a plaintiff may still satisfy the prima-facie-showing requirement by presenting evidence from which an inference could be drawn that the adverse action was taken at least in part because of the plaintiff's protected status.  In this case, therefore, Plaintiff would need to

present some evidence that he was denied entry into the ELP because he is Hispanic.  *See, e.g., Smith v. FDC Corp.*, 787 P.2d 433, 437 (N.M. 1990) (not all factual situations will fit into any one type of analysis, although unlawful discrimination may nevertheless be present; in a termination situation, prima facie case can sometimes be shown even absent proof that the plaintiff was replaced by someone not in the protected class).[3]

Unfortunately for Plaintiff, he has presented no such evidence.  Plaintiff presented evidence indicating his supervisor at the time, Scott Corley, promised Plaintiff in the summer of 2007 that he would be placed in the ELP in September 2007, as an exception to the normal April-placement schedule.  [Doc. 47, Exh. A, pp. 469, 478; Doc. 51-1]  Plaintiff then claimed that Mr. Corley kicked him in a meeting occurring on September 1, 2007, in an effort to manufacture some type of incident that would allow him to deny Plaintiff's application for the ELP program.[4]  [Doc. 47, Exh. A, pp. 470-71, 473-74]  However, the only evidence of a racial motivation for Mr. Corley's alleged action is Plaintiff's rank speculation.  He testified at his deposition that Mr. Corley had a bias against Hispanics moving up to "higher positions" and kicked Plaintiff because he did not want to see a Hispanic in the ELP.  [Doc. 47, Exh. A, pp. 473-74]  No evidence was presented in support of his conclusory assertions; Plaintiff pointed to no statement by Mr. Corley, or prior action on his part, that could be construed as evidence of an

---

[3]The Court recognizes this inquiry is essentially the same as the "pretext" inquiry that would normally follow the establishment of a prima facie case and the employer's response with a non-discriminatory reason for its actions.  The traditional prima-facie-case analysis does not work in this case, however, because as discussed the adverse employment action taken was not the type that would usually allow for a comparison with an individual who is not a member of the protected class at issue in this case.  The *McDonnell Douglas* test is simply a useful tool that should not be applied mechanically.  *See, e.g., Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 n. 9 (6th Cir.1990) (decided in context of age-discrimination case).  If this Court were to rigidly adhere to the typical prima-facie-showing test, Plaintiff would not have an opportunity to ever show that his case is the unusual one that does not comfortably fit that analysis.

[4]It is not apparent how Mr. Corley's alleged act of kicking Plaintiff could be an incident that would be held against Plaintiff for purposes of the ELP program, but this is Plaintiff's theory.

anti-Hispanic bias.  In fact, Plaintiff testified that he had not previously had any dispute with Mr. Corley, and that the kick came out of the blue.  [*Id.* p. 470-71]  Mr. Corley, on the other hand, has pointed out that his wife is Hispanic, his children are therefore Hispanic, and his grandmother is from Spain.  [Doc. 47, Exh. I, p. 79]  He added that he has no animosity toward Hispanics, and Plaintiff has presented no evidence that could tend to contradict that statement. In the absence of any evidence that could give rise to an inference that discrimination against Hispanics was the motivation for Mr. Corley's actions, Defendant is entitled to summary judgment on Plaintiff's claim that he was denied entry to the ELP due to his race.  *See, e.g., Holmes v. Regents of Univ. of Colorado*, 1999 WL 285826 (10th Cir. 1999, unpublished) (citing *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993) for proposition that even when elusive concepts like motive or intent are in play, summary judgment may be appropriate if nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation).

     **(3)  Termination Issue:**  It should first be noted that Plaintiff raises this issue both as a matter of race discrimination and as a question of retaliation.  This portion of the opinion addresses only the discrimination aspect.  For a termination claim, the *McDonnell Douglas* prima facie showing required of a plaintiff is slightly different than for other types of cases.  The plaintiff must generally present evidence creating a genuine issue of fact as to whether (1) he is a member of the protected group; (2) he was qualified to continue in his position; (3) he suffered a termination of his employment; and (4) his position was filled by someone not a member of the protected class.  *See  Smith v. FDC Corp.*, *supra*, 787 P.2d at 437.  Plaintiff has satisfied the first three elements, by showing he is Hispanic, he had been a store manager for many years prior to his termination, and his employment was terminated in September 2008.  As to the fourth element, however, Plaintiff presented no evidence concerning his replacement, and has therefore not shown his position was filled by a person who is not Hispanic.

    Again, this lack of evidence as to Plaintiff's replacement is not fatal to his claim.  As was the case with the ELP issue, Plaintiff can also establish his prima facie showing by other means,

if he can present evidence tending to raise an issue of fact as to whether his termination was motivated by the fact that he is Hispanic. *See Smith, supra*; *see also Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir.2004) (reframing third and fourth elements of prima facie case as requiring plaintiff to show he was terminated "under circumstances giving rise to an inference of discrimination"). Again, however, Plaintiff has failed to present any such evidence. The decision to terminate Plaintiff's employment was made by Joe Limke, a district manager who was Plaintiff's direct supervisor, and Roberto Valencia, a vice president of store operations employed by Defendant. Plaintiff has not pointed to any evidence that either of these individuals had any bias against Hispanics, or to any other evidence that might indicate race played a role in the decision to terminate Plaintiff's employment.[5] Plaintiff's sole argument is that Defendant's investigation of the two incidents that precipitated his termination were sham investigations. Even if this were true, however, there must still be evidence that the sham was designed to cover up discrimination on the basis of Plaintiff's race, rather than some other motive such as simple dislike of Plaintiff. There is simply no evidence that Mr. Limke or Mr. Valencia, Hispanic-surnamed himself, acted on the basis of Plaintiff's race in reaching the decision to terminate his employment with Defendant. Summary judgment is therefore appropriate on this claim.

   **B. Hostile Work Environment Claim:** Plaintiff contends he was subjected to a hostile work environment on the basis of his race. To create a genuine issue of material fact as to the existence of an actionable hostile work environment, a plaintiff must present evidence tending to show that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1169-70 (10th Cir.2007). While Plaintiff's complaint reviewed several claimed instances of harassment based on race, in his answer brief he narrowed this

---

[5]It should be noted that Plaintiff's response brief barely mentions discrimination in the context of the termination of employment, and focuses much more heavily on the retaliation aspect of that claim. In the interest of completeness, however, the Court discusses both aspects separately.

claim to one incident -- Mr. Corley's alleged act of kicking Plaintiff at a meeting attended by a number of other store managers. [Doc. 51, p. 19] The Court's discussion will therefore focus on that incident.

Defendant argues that if the kicking incident did occur, which Defendant denies, one such incident is not sufficient to create a hostile work environment. The Court disagrees. It is true that normally a hostile work environment requires a steady barrage of opprobrious actions, rather than a single occurrence. *See, e.g., Morris v. City of Colorado Springs*, 666 F.3d 654, 666 (10th Cir. 2012). However, if a single instance is severe enough, it can certainly alter the conditions of one's employment enough to be actionable under Title VII or the New Mexico Human Rights Act. For example, if a supervisor physically assaults an employee, uttering a racial epithet as he does so, the employee might very well be justified in concluding the workplace is too hostile to endure. *See id.*, 666 F.3d at 667 (discussing cases in which single incidents of physical assault were sufficient to constitute hostile work environment).

The key consideration with respect to a physical assault is the issue of motivation; if the assault was a result of personal animus rather than race or gender hostility, it cannot give rise to a hostile-work-environment claim. *See, e.g., Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir.2005) (to survive summary judgment on a hostile work environment claim, a plaintiff must show the harassment "stemmed from racial animus"). As the Court has already discussed, there is no evidence that Mr. Corley held animosity toward Hispanics or that he acted out of such animosity when he allegedly kicked Plaintiff. For all the Court can tell,[6] Mr. Corley was simply having a bad day, acting out in front of his audience of store managers, engaging in what he thought was horseplay, or expressing an intense personal dislike of Plaintiff. None of these possible motives are actionable under the Human Rights Act; like Title VII, the Act is not a guarantor of workplace civility but provides protection against only certain types of

---

[6]The Court must, of course, assume the kick did occur, at the present stage of the proceeding.

discrimination or harassment.  *See id.*, 397 F.3d at 833.  Absent any evidence of a racial motive for Mr. Corley's action, summary judgment is warranted on Plaintiff's hostile-work-environment claim.

**C.  Retaliation Claim:**  Plaintiff maintains he was fired in retaliation for the EEOC charge he filed on June 28, 2008.  In the retaliation context, and with specific reference to the Human Rights Act, a prima facie case is established by showing the following:  (1) Plaintiff engaged in a protected activity; (2) Plaintiff was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Gonzales v. New Mexico Dep't of Health, supra*, 11 P.3d at 558.  Plaintiff engaged in protected activity by filing his EEOC charge, and suffered an adverse employment action when he was fired.  The only element remaining in issue, therefore, is the causal-connection prong of the test.

Plaintiff contends he has satisfied the causal-connection requirement by establishing a close temporal proximity between the filing of his EEOC charge and the termination of his employment.  At the prima-facie-case stage of the analysis, temporal proximity between the protected activity and the adverse employment action can indeed be sufficient to allow an inference of causal connection between the two.  *See, e.g., Juneau v. Intel Corp.*, 127 P.3d 548, 554 (N.M. 2005).  The temporal proximity must, however, be quite small; under Tenth Circuit law, for example, one month is sufficiently close in time but three months is too long.  *See id.* (discussing Tenth Circuit cases).

Plaintiff argues there were only two months between his EEOC charge and his termination, and this is sufficiently close in time to allow the causal-connection inference to be drawn.  However, the EEOC charge was filed June 26, 2008, and the transcript of Plaintiff's job-related hearing, at which he was terminated, is dated September 26, 2008.  This is a gap of three months, not two; under some Tenth Circuit cases, Plaintiff would be held to have failed to satisfy the causal-connection requirement of the prima facie case.  *See, e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).  Nevertheless, the Court will not apply this Tenth Circuit

11

caselaw to Plaintiff's New Mexico Human Rights Act claim, for two reasons. First, New Mexico courts have not adopted the Tenth Circuit's guidelines for temporal proximity in the context of retaliation claims, although they have not rejected those guidelines either. *See Juneau, supra*, 127 P.3d at 554. Second, common sense indicates (and several cases agree) that the starting date for the temporal-proximity analysis should not be the date an EEOC charge was filed, but the date the employer became aware of it. *See, e.g., Fryer v. Coil Tubing Servs., LLC*, 415 Fed.Appx. 37, 46 (10th Cir. 2011, unpublished) (calculating temporal-proximity period from date employer learned of plaintiff's EEOC charge). No evidence of that date has been presented to the Court, but it stands to reason Defendant learned of the charge at some point later than June 28, making the time period between the charge and Plaintiff's termination somewhat less than three months. The Court will assume for purposes of this opinion that Plaintiff has satisfied the causal-connection prong of the prima-facie-case analysis.

Since Plaintiff has established a prima facie case of retaliation, the Court moves to the next step, which requires Defendant to proffer a non-retaliatory reason for terminating Plaintiff's employment. *See Juneau, supra*, 127 P.3d at 551-52. Defendant argues it fired Plaintiff for two instances of misconduct.[7] One instance involved the hiring of an employee before the individual's background check cleared. It subsequently turned out the employee had a conviction related to controlled substances on his record, and he was terminated after working for Defendant for approximately a week. [Doc. 47, Exhs. N, O] The other instance concerned an accusation made against Plaintiff by an outside contractor, who claimed Plaintiff had referred to an individual as a "fucking lazy nigger." [*Id.*, Exhs. N, M, O, R] There is undisputed evidence that either one of these instances of misconduct would have independently justified

---

[7]Defendant's briefs and exhibits covered many more subjects than these two, including alleged excessive absenteeism, an incident involving alleged falsification of charitable contributions, and store-inspection-related issues. None of these topics was made a basis for Plaintiff's termination at his pre-termination hearing. [Doc. 51, Exh. M] The Court therefore assumes they formed no part of the decision to terminate Plaintiff's employment, and has not considered them in the summary-judgment analysis.

termination of employment. [*Id.*, Exh. B] Defendant has thus met its burden of presenting evidence of a non-retaliatory justification for its employment action.

The final step in the *McDonnell Douglas* analysis, which determines whether this claim will survive summary judgment, requires Plaintiff to submit evidence tending to show that Defendant's explanation for its action is a pretext for retaliation. *See Juneau, supra*. An initial hurdle that must be met is to establish that the person or persons making the decision to terminate Plaintiff's employment knew about his protected conduct, the EEOC charge. Mr. Valencia, one of the two people involved in the decision, readily admitted in his affidavit that he knew about the charge of discrimination. [Doc. 47, Exh. B] Therefore, the knowledge prerequisite is not an issue in this case. However, Mr. Valencia denied that the charge played any role in the decision to terminate Plaintiff's employment; it is incumbent on Plaintiff to point to evidence creating an issue of fact as to whether that assertion is true.

Plaintiff has attempted to do so by making two arguments. First, he denies that he committed either alleged infraction. Second, he contends Defendant's investigations of both incidents were sham investigations, not intended to ferret out the truth but simply to provide a pretext for terminating his employment. Plaintiff's first argument is legally insufficient. The crucial question is not whether Plaintiff in fact committed either instance of misconduct; instead, it is whether Defendant believed he had done so. *See, e.g., Sorbo v. United Parcel Serv.*, *supra*, 432 F.3d at 1178; *Medley v. Polk Co.*, 260 F.3d 1202, 1207 (10th Cir.2001); *Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1231-32 (10th Cir. 2000); *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir.1998). Therefore, simply denying any role in the incidents does not raise an issue of fact sufficient to avoid summary judgment. The correct analysis requires the Court to examine Defendant's conduct in investigating the incidents as well as the information provided to Defendant. The Court must then determine whether issues of fact exist concerning the good-faith nature of the investigation or as to other circumstances that could indicate Defendant blinded itself to significant facts contradicting its decision. *See, e.g.,*

*Kendrick*, *supra*, 220 F.3d at 1231 (suggesting that a showing of a sham investigation could raise an issue of fact in the summary-judgment context).

After each alleged incident occurred, Defendant conducted an investigation. The investigation of the racially derogatory comment was precipitated by a written complaint submitted by the third-party contractor who claimed Plaintiff had made the statement. [Doc. 47, Exh. M] As part of the investigation Defendant's representative interviewed Plaintiff, the third-party contractor, and an employee of Defendant (Mr. Omidvar) who spoke with the contractor after the incident. [*Id.*, Exhs. O, R] Defendant also apparently obtained an affidavit from an employee of the third-party contractor who also spoke with the contractor after the incident. [*Id.,* Exh. N] Plaintiff denied making any such statement. The third-party contractor, on the other hand, reported being shocked, offended, and disgusted by the comment. Mr. Omidvar, Defendant's employee, stated that he did not hear the comment. He did, however, notice that the contractor was upset afterward, and after inquiring about this he was told by the contractor that Plaintiff should not be saying those kinds of things about the individual in question, although the contractor refused to repeat what Plaintiff had allegedly said. The contractor's employee similarly stated he did not hear the comment but was told by the contractor what it was, and described the contractor as being visibly shocked and upset afterward.[8]

During the investigation, therefore, Defendant was presented with Plaintiff's flat denial that he made the comment, and the evidence to the contrary from the third-party contractor as well as other individuals who reported how upset the contractor was after speaking with Plaintiff. There was no evidence that Defendant had information indicating the contractor had a reason to fabricate the incident; while Plaintiff suggests the contractor might have had a

---

[8]Although Plaintiff did not raise this issue, the Court has noted the possibility that the contents of the investigative reports might be hearsay that should not be considered during the summary-judgment analysis. However, the reports' contents are not offered to prove the truth of the matters asserted; they are simply evidence of what information was before Defendant at the time the decision was made to terminate Plaintiff's employment. Restricted to that purpose, the statements in the reports are not hearsay. Fed. R. Evid. 801(C).

"vendetta" against him, he offers no evidence in support of that suggestion. In addition, there is no evidence the investigation performed by Defendant was a sham. Plaintiff's only argument in support of that possibility is the erroneous observation that Defendant did not interview any of its employees, such as Mr. Omidvar, who could corroborate Plaintiff's version of events. As noted above, Defendant did in fact interview Mr. Omidvar, who offered limited corroboration of the contractor's version rather than Plaintiff's. Given the investigation and the circumstances, the fact that Defendant chose to believe the contractor's account of the incident rather than Plaintiff's cannot give rise to an inference of pretext.

As to the premature-hiring incident the situation is much the same. Defendant conducted an investigation that included interviews with Plaintiff, two other employees of Defendant named Mr. DesAutel and Mr. O'Canna, and the former employee who had been hired before his background check cleared. [Doc. 47, Exh. O] Mr. O'Canna claimed he had approached Plaintiff about the former employee's lack of background clearance, and Plaintiff put his finger to his lips and made a hushing sound. Mr. DesAutel said he believed Plaintiff had made a mistake and had inadvertently hired the former employee without the proper clearance. The former employee stated that he called Plaintiff to see if his drug test had cleared, and that Plaintiff told him to report to work. Plaintiff allegedly first admitted he had inadvertently hired the former employee without checking to see if his background check had cleared. Plaintiff subsequently denied hiring the former employee at all, claiming that Mr. DesAutel had in fact hired him.

Once again Defendant was faced with contradictory claims about the facts of the incident. Once again, there is nothing suspicious or indicative of pretext about Defendant's choice to believe the statements made by the other employees and the former employee, over Plaintiff's denial of responsibility. It was incumbent on Plaintiff to submit some evidence indicating the two decision-makers, Mr. Valencia and Mr. Limke, did not honestly believe the accusations against Plaintiff were true, and did not act in good faith on those beliefs. *See Piercy v. Maketa*, 480 F.3d 1192, 1200-01 (10th Cir. 2007). Since Plaintiff has not done so, no issue of

fact has been raised as to the pretext issue and summary judgment is appropriate on Plaintiff's claim of retaliatory termination.

**Conclusion**

Based on the foregoing discussion, Defendant's motion for summary judgment will be granted and this case dismissed.

Dated this 29th day of March, 2012.

_____
BRUCE D. BLACK
United States District Judge